THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEVEN MADORI, Respondent.

Second Department, February 5, 1990

## APPEARANCES OF COUNSEL

*Carl A. Vergari, District Attorney (Richard E. Weill* of counsel), for appellant.

*Vincent W. Lanna (Irving Anolik* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

Pursuant to CPL 700.50 (3): "[W]ithin a reasonable time, but in no case later than ninety days after termination of an eavesdropping warrant * * * written notice of the fact and date of the issuance of the eavesdropping warrant, and of the period of authorized eavesdropping, and of the fact that during such period communications were or were not intercepted, must be served upon the person named in the warrant". The primary issue presented on this appeal is whether the notice provision of the statute is satisfied when, within the 90-day period, the prosecution complies with CPL 700.70 by supplying the defendant with a copy of the eavesdropping warrant, and the application with supporting affidavits therefor. In this case, it should be noted, the prosecution also provided the defendant with copies of a search warrant and underlying application based upon the results of the eavesdropping and further stipulated to allow the defense counsel access to the tapes of the eavesdropping.

This case arises out of a 1986 investigation by the Bureau of Criminal Investigation of the New York State Police into suspected illegal gambling activities taking place in the Town of Harrison, Westchester County. In August 1986, based upon information provided by a confidential informant, a certain

Anthony Delia became a target of the investigation. Delia, as it turned out, is the defendant's father-in-law and twice previously had been convicted of gambling-related offenses. As part of the investigation, an undercover police investigator placed two bets on the New York Yankees by calling a telephone number listed in the name of "A. Delia". Based on this information, the People obtained an eavesdropping warrant on August 22, 1986, permitting a wiretap to be placed on Delia's telephone line and permitting the interception of communications related to gambling activities for a period of up to 30 days.

The actual interception of calls to Delia's line pursuant to the August 22, 1986 wiretap order did not begin until September 4, 1986. However, during the next 12 days, the police overheard nearly 400 conversations involving gambling activity, in which approximately $95,000 in sports bets were placed with Delia. Among the people heard discussing illegal gambling with Delia was the defendant Steven Madori. The defendant's conversations with Delia involved the discussion of the daily betting line (the point spread), the distribution of football pool tickets, and the general operation of Delia's gambling business. Based upon this information, on September 19, 1986, the People applied for, and obtained, a 30-day extension of the eavesdropping warrant, which was amended nunc pro tunc to include the defendant as a person whose communications were to be overheard and recorded.

Subsequently, a second eavesdropping warrant was obtained on September 29, 1986, permitting a wiretap to be placed on the two telephone numbers listed to the defendant and his wife at their Scarsdale home. In support of the application for this warrant, the People submitted an affidavit wherein a police investigator contended that the communications intercepted pursuant to the prior warrants indicated that the defendant was Delia's partner and extensively involved in the gambling operation. The affidavit included transcriptions of several conversations between the defendant and Delia concerning the placement of bets.

Relying on evidence gathered as a result of this latter wiretap, the People obtained a search warrant for the defendant's residence, which was executed by the police on October 20, 1986. At the defendant's residence, the police discovered numerous gambling records on a desk in the defendant's bedroom, and the defendant spontaneously stated that these

were records of his own bets, and that there was no way that the police could have had a wiretap on his telephone.

Pursuant to CPL 700.50 (2), the People applied for and obtained an order on October 28, 1986, sealing the communications recorded on the defendant's line between September 30 and October 20. A second sealing order with respect to communications recorded on the Delia line between September 2 and October 19 was issued on November 18, 1986.

The defendant was subsequently indicted on the charge of possession of gambling records in the first degree, and was arraigned on January 9, 1987. At the arraignment, the People served defense counsel with copies of the August 22, 1986 warrant directed at Delia's telephone line, the September 19, 1986 extension of that warrant, and the September 29, 1986 warrant directed at the defendant's telephone lines. The People also served the defense counsel with copies of the applications and supporting affidavits upon which the warrants were issued, all in compliance with CPL 700.70, which provides that: "[t]he contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant unless the people, within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application, under which interception was authorized or approved". The People further entered into a consent order on the same date, agreeing to the defendant's inspection of "[a]ny tapes or electronic recordings intended to be offered at the trial or hearings by the prosecution, and any transcripts thereof, if presently available or when they become available".

Following his arraignment, however, the defendant moved to suppress the wiretap evidence and the evidence obtained from the search of his residence, *inter alia,* on the ground that the People had not complied with CPL 700.50 (3). The Supreme Court, holding that the statute must be strictly construed, suppressed the evidence on the ground that it was mandatory that the defendant, as the target of the September 29 wiretap, receive CPL 700.50 (3) notice.

We conclude, however, that under the circumstances herein, where, within 90 days of the termination of both eavesdropping warrants, the defendant was provided with copies of all the documents required to be furnished to him by CPL 700.70, giving him a greater amount of information than

is required by CPL 700.50 (3), suppression of the wiretap evidence was not warranted. In other words, the notice provision of CPL 700.50 (3) was satisfied in this case when the prosecution, within 90 days of the termination of the eavesdropping, fulfilled its obligation under CPL 700.70 by supplying the defendant, *inter alia,* with a copy of the warrants and the applications therefor.

On appeal, the People maintain that CPL 700.50 (3) should not be interpreted more strictly than its Federal counterpart (18 USC § 2518 [8] [d]), relying upon two Federal cases, *United States v Variano* (550 F2d 1330), and *United States v Principie* (531 F2d 1132), which specifically rejected the contention that the New York statute is to be interpreted more restrictively than the Federal statute. In further support of their position that both the Federal and State statutes should be uniformly interpreted, the People note that the legislative history reveals that the New York eavesdropping statute was intended to conform to the Federal statute, and that Federal-State uniformity is sound practice in this case.

The People also submit that suppression is not warranted based upon a consideration of the statutory purposes of the two notice sections. In this regard, the People argue that the only statutory purpose for CPL 700.50 (3) is to alert the notice recipient to the opportunity to request that the court exercise its discretion and allow him to inspect, in the interest of justice, portions of the intercepted communications, applications, and warrants. When the recipient of the notice is a criminal defendant against whom the intercepted communications are to be offered as evidence, however, this purpose is adequately met when the prosecutor provides the defendant with copies of the warrant and eavesdropping application, as required under CPL 700.70. Thus, the People urge that the functions of CPL 700.50 (3) and 700.70 overlap completely in this case, and compliance with CPL 700.70 effectively constitutes compliance with 700.50 (3).

The People also contend that CPL 700.50 (3), unlike either CPL 700.70 or 710.30, does not expressly mandate preclusion for failure to comply with its provisions, which indicates that the Legislature did not intend that the same remedy be imposed for a failure to comply strictly with CPL 700.50 (3).

The defendant replies that the Court of Appeals decision in *People v Gallina* (66 NY2d 52) requires strict compliance with CPL 700.50 (3), and that the requirements of CPL 700.50 (3)

are mandatory, not ministerial. The defendant also distinguishes *United States v Variano* (550 F2d 1330, *supra*), and the Supreme Court case upon which it is based, *United States v Donovan* (429 US 413), upon the ground that those cases involved the failure to serve a discretionary notice upon a nontarget of the wiretap.*

To further support his strict compliance argument, the defendant analogizes CPL 700.50 (3) to the requirement for notice of intent to use a defendant's statements in evidence. In addition, he maintains that personal service of a written notice was required, as was the case before the 1986 amendment to CPL 700.50 (3).

It should be observed that those cases which have held that there must be rigid adherence to New York's wiretapping provisions have emphasized both the history of the present statute and the nature of electronic surveillance. Prior to 1968, the Federal Communications Act of 1934 prohibited any person unauthorized by the sender from intercepting and revealing the contents of any communication (47 USC former § 605; 48 US Stat 1103). Then in June 1968 the Supreme Court held that the Federal statute precluded the States from introducing into evidence at State criminal trials evidence of telephone communications intercepted by State law enforcement officials *(see, Lee v Florida,* 392 US 378). The constitutional standards regulating the use of electronic eavesdropping equipment (as distinguished from wiretapping devices) by law enforcement officials had been earlier formulated by the court in *Berger v New York* (388 US 41), and *Katz v United States* (389 US 347). Congress, in title III of the Omnibus Crime Control and Safe Streets Act of 1968, which was signed into law only two days after the decision in *Lee v Florida (supra),* authorized both Federal and State law enforcement officials to conduct wiretaps and other electronic surveillance, provided there was due compliance with the statutory procedures designed to comport with the constitutional requirements set forth in the *Berger* and *Katz* decisions *(see generally, People v Sher,* 38 NY2d 600, 603; 18 USC § 2516 [2]).

In *Berger v New York (supra,* at 56), the Supreme Court had noted that: "By its very nature eavesdropping involves an

---

* Both the Federal statute and the New York statute require posttermination notice of the eavesdropping to "such other parties to the intercepted communications as the justice may determine in his discretion is in the interest of justice" (CPL 700.50 [3]).

intrusion on privacy that is broad in scope. As was said in *Osborn* v. *United States,* 385 U. S. 323 (1966), the 'indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments' ". This is due to the fact that secret searches have historically been disfavored under the Fourth Amendment of the US Constitution *(see, Gouled v United States,* 255 US 298, 305). Thus, the purpose of posttermination notice was to "insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject" *(see,* S Rep No. 1097, 90th Cong, 2d Sess 237, reprinted in 1968 US Code Cong & Admin News 2112, 2194). Indeed, the Senate report also stated that title III had a dual purpose of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized" (S Rep No. 1097, 90th Cong, 2d Sess 237, reprinted in 1968 US Code Cong & Admin News 2112, 2153).

In 1969, in the wake of both *Berger v New York (supra),* which struck down this State's scheme of eavesdropping regulation, and the enactment of title III, the New York State Legislature enacted Laws of 1969 (ch 1147), which ultimately became CPL article 700 *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 700.05, at 461). The Governor's memorandum accompanying Laws of 1969 (ch 1147) indicated that the bill was intended to conform State standards for court-authorized eavesdropping warrants with Federal standards, and "promote effective law enforcement within the State by reducing the potential for confusion among law enforcement officials and the likelihood of nonsubstantive litigation arising out of unnecessary differences between the two laws" (1969 NY Legis Ann, at 586).

The New York Court of Appeals,. in a case concerned with strict adherence to the statutory requirement of judicial sealing of taped communications immediately upon the expiration of an eavesdropping warrant, observed that: "Our interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect. The insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one's individual privacy to a far greater extent than the writs of assistance and general warrants so dreaded

by those who successfully battled for the adoption of the Bill of Rights" *(People v Washington,* 46 NY2d 116, 121-122).

The only New York appellate case to deal directly with the issue of the People's failure to serve posttermination notification upon the target of a warrant is *People v Hueston* (34 NY2d 116), which arose under the predecessor to the current statute, former Code of Criminal Procedure § 823. That statute provided that: "[n]ot later than sixty days after termination of the eavesdropping warrant or any renewals thereof * * * written notice of issuance of the eavesdropping warrant and of the period of authorized eavesdropping must be personally served upon the person named in the warrant whose conversations were sought to be overheard * * * or upon the subscriber to the telephone".

During the eavesdropping authorized in *Hueston (supra),* the 60-day period was extended to 90 days by the enactment of Laws of 1969 (ch 1147). In *Hueston,* the People admitted that they had never given the required posttermination written notification, but it was undisputed that the defendant had actual notice of the warrant at least within 78 days after its termination, when he moved for an order directing the District Attorney to turn over copies of the warrant and supporting applications. The court, after noting that some of the acts of eavesdropping involved occurred after the effective date of the extension of the notification period to 90 days, concluded that if it were shown that the defendant had actual knowledge of the existence of the warrant within the time period allowed for notification by the prosecution, then formal written notification was merely a ministerial act, and the failure to so notify did not require the suppression of evidence.

In support of this conclusion, the *Hueston* court stated that the purposes served by the notification requirement were, first, to publicize wiretaps to assure the community that eavesdropping techniques were reasonably employed and that the subject of the eavesdropping would also eventually learn of the eavesdropping, and, second, to allow defendants in criminal actions to test the legality of the warrants by making timely motions to suppress evidence. The court found that the defendant's motion evidencing his knowledge of the wiretap indicated that both of the purposes behind the notification requirement had been accomplished, and, thus, "[u]nder these circumstances, we do not believe any useful purpose would be served by a holding which hinged the admissibility of evidence upon a prosecutor's handing a formal written notification to a

defense attorney who was already in possession of the information contained therein" *(People v Hueston, supra,* at 122). The court further rejected an argument that the Federal counterpart of New York's posttermination statute, 18 USC § 2518 (8) (d), required suppression, finding that there was no basis for distinguishing between the requirements of the Federal and State statutes on the facts presented.

The Federal counterpart to CPL 700.50 (3), which is 18 USC § 2518 (8) (d), reads as follows:

"Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518 (7) (b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—

"(1) the fact of the entry of the order or the application;

"(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

"(3) the fact that during the period wire, oral, or electronic communications were or were not intercepted."

Thus, it is evident that the provisions of CPL 700.50 (3) are remarkably similar to those of the Federal legislation. Indeed, it has been observed that although, as a general rule, "the requirements of CPL article 700 must be strictly construed, that article reflects and follows controlling Federal law" *(see, People v Casalini,* 126 Misc 2d 665, 668, citing *People v Sher,* 38 NY2d 600, *supra).* In this regard, then, it would be instructive to examine the manner in which the Federal courts have handled this problem.

In construing the Federal eavesdropping laws, the Federal courts have concluded that only certain violations of the statute will result in the suppression of evidence. The United States Supreme Court has indicated that suppression will only be warranted when the statutory provision involved "directly and substantially" furthers the congressional intent to "limit the use of intercept procedures to those situations [which clearly called] for the employment of this extraordinary * * * device" *(see, United States v Giordano,* 416 US 505, 527). The question that must be answered, therefore, is whether the

particular statutory language plays a "central" or "functional" role in guarding against illegal eavesdropping *(see, United States v Chavez,* 416 US 562, 578).

In *United States v Donovan* (429 US 413, *supra),* it was indicated that the usual practice in the Federal courts was for the Government to inform the issuing Judge as to the identities of the persons whose conversations were overheard in the course of the interception, but who had not been named in the application, thus enabling the Judge to decide whether they should be served with notice of the interception *(United States v Donovan, supra,* at 431). The Supreme Court held that the People's failure to inform the Presiding Justice of the identity of two defendants whose conversations were intercepted, so that they could be notified, was not a ground for suppression, noting that "[t]he legislative history indicates that postintercept notice was designed * * * to assure the community that the wiretap technique is reasonably employed. But even recognizing that Congress placed considerable emphasis on that aspect of the overall statutory scheme, we do not think that postintercept notice was intended to serve as an independent restraint on resort to the wiretap procedure" *(United States v Donovan, supra,* at 439). The Supreme Court also noted in a footnote that the defendants had not been prejudiced by their failure to receive the postintercept notice since they had been served with copies of all the intercept orders, applications, and related papers, including transcripts of the intercepted conversations. However, as the defendant in the instant case points out, *Donovan* involved defendants who were entitled to discretionary notice, rather than a target of a warrant who must receive notification.

Similarly, the two cases from the United States Court of Appeals for the Second Circuit, *United States v Principie* (531 F2d 1132, *supra),* and *United States v Variano* (550 F2d 1330, *supra),* upon which the prosecution relies, also involved discretionary rather than mandatory postintercept notices. Both *Principie* and *Variano* hold that a defendant must show prejudice before a motion to suppress will be granted on the ground of a failure to give posttermination notice in violation of CPL 700.50 (3) and 18 USC § 2518 (8) (d). The Second Circuit in both *Principie* and *Variano* rejected arguments that CPL 700.50 (3) is more restrictive than 18 USC § 2518 (8) (d).

However, in *United States v Fury* (554 F2d 522, *cert denied* 436 US 931), the Second Circuit made it clear that the principles it had set forth in *Principie* and *Variano* applied

whether the postintercept notice was a mandatory one or a discretionary one. "[T]he law in this circuit * * * is that failure to give the proper notification will result in suppression of the wiretap evidence only where prejudice is shown, even when notice is 'mandatory' under 18 USC § 2518 (8) (d)" *(United States v Fury, supra,* at 528). The court acknowledged that while the *Donovan* case involved persons only entitled to discretionary notice, it expressed the view that the reasoning in *Donovan* was equally applicable to cases involving persons entitled to mandatory notice. "In sum, while it is desirable for the prosecutors to meet the ninety-day notice requirement, we again hold that a failure to strictly observe the time limitation puts the burden on the defendant to show that he was prejudiced" *(United States v Fury, supra,* at 529; *see also, United States v Rizzo,* 492 F2d 443, 447, *cert denied* 417 US 944).

In contrast to *People v Hueston (supra),* and the Federal cases noted above, the main case relied upon by the defendant and the hearing court herein, *People v Gallina* (66 NY2d 52, *supra),* only peripherally dealt with the posttermination requirement of CPL 700.50 (3). The *Gallina* case involved several wiretaps which were authorized in connection with an investigation into sales of heroin at a meat market. The authorization for one of the wiretaps expired on September 9, 1981, but the People did not obtain an extension of it until September 15, 1981. Meanwhile, the recording equipment was left in place, and splices into telephone lines were not removed.

The *Gallina* court found that CPL 700.40 prohibited the issuance of an order extending a wiretap after the original wiretap order had expired, rejecting an argument by the People that their application to extend the lapsed warrant was the functional equivalent of a new application for a warrant. It was within this context that the court stated that: "The People are well aware, or should be, that notice must be given to the target of a wiretap at most 90 days after the expiration of the warrant or any extension thereof (CPL 700.50 [3]). Obviously, then, where a gap in surveillance and then a second wiretap follow an original wiretap, two notices must be given, which was not done in this case. To sustain the People's contention that the application for a warrant for wiretap five was a new original application while allowing them to circumvent the notice requirement would defeat the * * * statutory requirements [which] must be strictly con-

strued" *(People v Washington, supra,* at 57). Thus, the court refused to allow the prosecution to avoid the consequences of a lapsed warrant by claiming that their application to extend the warrant was really an application for a new warrant, since this would circumvent CPL 700.50 (3).

However, circumventing the notice of requirement is not the issue in the instant case, and we do not agree with the hearing court that *Gallina (supra)* is in any way dispositive of the instant case. The hearing court points to the fact that *Gallina (supra)* did not cite *Hueston (supra)* or refer to CPL 700.50 (3) as "ministerial", but this is not persuasive reasoning for disregarding *Hueston,* given that a different issue was presented in *Gallina.* Moreover, *Hueston* held only that CPL 700.50 (3) notice was ministerial when a defendant had actual notice of a warrant within the statutory period, which is not equivalent to holding such notice unnecessary or allowing the notice requirement to be freely circumvented.

The hearing court was correct, however, in noting that CPL 700.50 (3) and 700.70 do serve somewhat different purposes. Judge Bellacosa's Practice Commentary on this point states that the general notification provision of 700.50 (3) "is to be distinguished from CPL 700.70 which adds another specific notification requirement without which evidence secured by an eavesdrop may not be used as evidence. That separate notification requirement triggers the opportunity for a suppression motion * * * as distinguished from this section's opportunity to find out who has been poking into your private life and why and with what results" (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 700.50, at 505).

However, while the notification requirements are distinct, we agree with the People that they can be considered to overlap in the case of a defendant who has received the documents he is entitled to under CPL 700.70 within 90 days of the expiration of the warrant. While a written notice advising a defendant of the date of issuance of an eavesdropping warrant, its period of authorization, and whether or not communications were intercepted, cannot substitute for providing a defendant with a copy of the warrant and the papers upon which it was based, the reverse is not true. In the instant case, the documents provided to the defendant gave him far more information than a simple 700.50 (3) notice, and he received the documents on January 9, 1987, which is within 90 days of the termination of the Delia warrant, which

expired on October 19, 1986. Therefore, the suppression of the wiretap evidence in this case was unnecessary.

The decision of the Appellate Division, Fourth Department, in *People v Mark* (68 AD2d 315), does not provide contrary authority. In *Mark,* the Fourth Department held that evidence should be suppressed where the People failed to give both CPL 700.70 and CPL 700.50 (3) notice. However, the court did note *(supra,* at 318) that "CPL article 700 and all its integral parts cannot be treated lightly or with cavalier disregard".

■ We would also note briefly that the amendment of CPL 700.50 (3) dispensing with the requirement for personal service of the posttermination notice became effective November 1, 1986, only 11 days after the Delia warrant expired, two days after the defendant's warrant expired, and well within the 90-day posttermination notification time period. Therefore, the hearing court correctly determined that the personal-service requirement was inapplicable to this case.

Accordingly, since the failure to give CPL 700.50 (3) notice does not warrant suppression where CPL 700.70 has been fully complied with within 90 days of the expiration of the warrant, and the defendant has not been prejudiced, the order entered December 17, 1987, is reversed insofar as appealed from, on the law, the order dated October 28, 1987, is vacated, and those branches of the defendant's omnibus motion which were to suppress wiretap evidence and evidence obtained from a subsequent search of the defendant's residence are denied.

Brown, J. P., Eiber and Kooper, JJ., concur.

Ordered that the order entered December 17, 1987, is reversed insofar as appealed from, on the law, the order dated October 28, 1987, is vacated, and those branches of the defendant's omnibus motion which were to suppress wiretap evidence and evidence obtained from a subsequent search of the defendant's residence are denied.