■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP ST. LOUIS, Appellant—Yesawich Jr., J. Appeal from a judgment of the County Court of Clinton County (Lewis, J.), rendered October 4, 1990, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the second degree.

Based primarily upon telephone conversations obtained by eavesdropping surveillance, defendant was indicted on various conspiracy and drug-related offenses. After a lengthy suppression hearing, and upon the denial of his motion to suppress the evidence derived from the eavesdropping, defendant pleaded guilty to criminal possession of a controlled substance in the second degree and was sentenced to an indeterminate prison sentence of five years to life. Pursuant to the negotiated plea agreement, defendant preserved the right to chal-

lenge the denial of his suppression motion on appeal; this appeal ensued. We affirm.

The warrant authorizing the initial wiretapping of defendant's telephone was based largely on information secured by means of prior wiretaps placed on the telephones of James Weir and Ronald Baker, the warrants for which were based on the requisite probable cause *(People v Weir,* 177 AD2d 811; *People v Baker,* 174 AD2d 815, *lv denied* 78 NY2d 920). Defendant maintains that the eavesdropping evidence implicating him should have been suppressed because the People failed to comply with CPL 700.50 (3). To the extent pertinent, that statute provides that the person named in the warrant and such other parties to the intercepted communications "as the justice may determine in his discretion is in the interest of justice" are to be given written notice within 90 days of termination of the eavesdropping that their communications were or were not intercepted. In a complementary argument, defendant contends that County Court's order extending the Baker eavesdropping warrant directed that notice and inventory be served upon all aggrieved persons in accordance with CPL 700.50 (3), that he is such an aggrieved person and that he did not receive notice that his conversations with Baker had been intercepted until more than 90 days after the extension order was terminated.

Although he was a party to the intercepted Baker communications, defendant was neither named in the Baker warrant nor entitled to such notice in the interest of justice *(see, United States v Principie,* 531 F2d 1132, 1143, *cert denied* 430 US 905; *United States v Rizzo,* 492 F2d 443, 447, *cert denied* 417 US 944). Indeed, granting defendant such notice would clearly have interfered with the contemporaneous investigation being conducted of him. And insofar as the Baker wiretap extension order states that notice and inventory is to be served upon "any and all aggrieved persons in according *[sic]* with [CPL] 700.05 (3)", we do not interpret this language as constituting a judicial determination that defendant was entitled to such notice, but merely that compliance with CPL 700.50 was to be had. Inasmuch as the People have established strict compliance with this statute, suppression is not dictated on this account *(see, People v Schulz,* 67 NY2d 144, 148).

Nor are we persuaded that suppression is mandated because the manner in which defendant was notified of the tap on his telephone did not comport with statutory requirements. The requisite notice documents were served not upon defendant

but rather upon his attorney within 90 days of the end of the eavesdropping extension order upon defendant's telephone. Such service was, we believe, "reasonably calculated to give [defendant] the notice required" (CPL 700.50 [3]; *see,* Preiser, 1986 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 700.50 [1991 Pocket Part], at 90). Moreover, it resulted in no prejudice to him *(see, United States v Donovan,* 429 US 413, 434; *United States v Fury,* 554 F2d 522, 528-529, *cert denied sub nom. Quinn v United States,* 433 US 910, 436 US 931). While it is true that the manner in which the notice was to be given was not prescribed by County Court as required by CPL 700.50 (3), there is no indication that the purposes of the notification requirement, namely, to publicize wiretaps so as to assure the community that they are reasonably employed and that the subject will eventually learn of them and to allow those whose conversations were tapped to test the legality of the underlying warrant, were frustrated *(see, People v Hueston,* 34 NY2d 116, 122, *cert denied* 421 US 947); hence, suppression is not called for *(see, People v Madori,* 153 AD2d 287; *see also, People v Marino,* 49 NY2d 774, 775).

The same reasons we relied upon to reject the contention that the Weir and Baker wiretap applications were issued without a sufficient showing that the People had satisfied a precondition to the authorization of these intercept orders, namely, that alternative investigative methods were unlikely to succeed (CPL 700.15 [4]; *see, People v Baker, supra),* compel a similar result here. As in Weir's and Baker's cases, the facts set forth in the State Police investigator's affidavit submitted in support of the instant warrant application—the rural location of defendant's home *(see, People v Wood,* 125 AD2d 823, 825) and resulting limited utility of physical surveillance *(see, United States v DePalma,* 461 F Supp 800, 813), the drug transactions engaged in were usually consummated behind closed doors *(see, People v Spano,* 170 AD2d 996, *lv denied* 77 NY2d 991, 992, 994, 1001), the fact that the participants in this geographically large drug conspiracy were particularly circumspect and dealt only with persons with whom they were familiar *(see, People v Bavisotto,* 120 AD2d 985, *lv denied* 68 NY2d 912, *cert denied* 480 US 933), and the lack of information regarding the location of the narcotics *(see, People v Hafner,* 152 AD2d 961, 962)—support the representations in the warrant application that resort to informants, an undercover police officer, induced cooperation of friends/acquaintances, search warrants, direct police questioning and Grand Jury subpoenas would be unlikely to succeed *(see, People v*

*Sica,* 163 AD2d 541, 542, *lv denied* 76 NY2d 990; *see also, United States v Fury, supra,* at 530; *cf., People v Viscomi,* 113 AD2d 76, *lv denied* 67 NY2d 658).

Lastly, we reject defendant's claim that the cocaine found in his automobile should have been suppressed because probable cause to issue the search warrant was lacking. The basis for the search warrant was a State Police investigator's affidavit describing tapped conversations and surveillance of defendant, along with the investigator's sworn recorded statement *(see,* CPL 690.40 [1]) referring to "records and ex parte orders, applications and affidavits filed by [another investigator]" *(see, People v Tambe,* 71 NY2d 492, 502). Those records incorporate transcripts of defendant's phone conversations, wherein he discusses in cryptic language the buying and selling of drugs *(see, People v Baker, supra),* as well as descriptions of surveillance of defendant in the company of suspected drug users and sellers, confirming the meaning of the tapped phone conversations. The warrant application revealed that the investigator had personal knowledge of the facts set forth therein *(see, People v Rizzo,* 126 AD2d 909, 910). This profusion of information constitutes probable cause for it is "sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place" *(People v Bigelow,* 66 NY2d 417, 423).

Mahoney, P. J., Weiss, Levine and Mercure, JJ., concur. Ordered that the judgment is affirmed.