[609 NYS2d 926]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATSY CAPOLONGO, Appellant.

Second Department, April 11, 1994

## APPEARANCES OF COUNSEL

*Lanna & Coppola,* Yonkers *(Kevin P. Gilleece* of counsel), for appellant.

*Jeanine Pirro, District Attorney* of Westchester County, White Plains *(John J. Sergi* and *Richard E. Weill* of counsel), for respondent.

## OPINION OF THE COURT

MILLER, J.

The critical issue raised on this appeal is whether the People's failure to serve upon the defendant, within 15 days after his arraignment, a copy of a Canadian wiretap warrant and its accompanying application, constitutes a violation of CPL 700.70 such that the evidence derived therefrom must be suppressed at the defendant's trial on charges of criminal possession of gambling records in the first degree and promoting gambling in the first degree (35 counts). For the reasons that follow, we hold that CPL 700.70 has no application to a Canadian wiretap, and, thus, the evidence derived therefrom by Canadian authorities was properly admitted at the defendant's trial.

This appeal stems from an illegal gambling operation carried out in Westchester and Bronx Counties. A criminal investigation conducted by the Westchester County District Attorney's office in conjunction with New York State Police initially focused on the activities of three alleged participants in the gambling operation: Paul Cuzzo, Alphonse Cuzzo, and Todd Alpert.

On April 23, 1990, an order of the Supreme Court, Bronx

County (Roberts, J.), authorized the interception and recording of certain calls over the Cuzzos's telephone lines. Consequently, in furtherance of its investigation, the police sought and obtained authorization from the Supreme Court, Westchester County (Cowhey, J.), to place a pen register on Alpert's telephone. The pen register on Alpert's telephone revealed that many of Alpert's calls were placed to the home of the defendant's father.

The extent of the defendant's involvement in the gambling operation became apparent after an eavesdropping order of the Supreme Court, Westchester County (Cowhey, J.), dated August 27, 1990, authorizing the interception and recording of certain calls over Alpert's telephone line. The recorded conversations revealed that Alpert was moving or "laying off" bets for the defendant.

On September 10, 1990, a warrant to search the defendant's home was issued by the Supreme Court, Westchester County (Cowhey, J.). The subsequent search of the premises produced gambling records recovered from the defendant's bedroom. Based on the foregoing evidence, i.e., the eavesdropping tapes and gambling records, the defendant was arrested on September 10, 1990, for the crimes of possession of gambling records in the first degree and promoting gambling in the first degree. The defendant was indicted and arraigned on February 1, 1991.

On April 8, 1991, the initial indictment was dismissed due to the People's failure to furnish the defendant with copies of the eavesdropping warrants and accompanying applications within 15 days after his arraignment, as required by CPL 700.70. The defendant's case was re-presented before a second Grand Jury, and on April 19, 1991, he was arraigned on charges of possession of gambling records in the first degree and promoting gambling in the first degree. On the very date of his arraignment on the second indictment, the defendant was furnished with copies of the Bronx and Westchester eavesdropping warrants and applications.

In June 1991 the defendant moved to dismiss the second indictment, arguing, *inter alia,* that any evidence seized at the time of his arrest and as a result of the eavesdropping orders should be suppressed due to the People's failure to comply with the 15-day notice provision of CPL 700.70 measured from the date he was arraigned on the first indictment. He also moved to suppress eavesdropping evidence for lack of probable

cause. By an order of the County Court, Westchester County (Silverman, J.), entered August 20, 1991, the defendant's motion was denied except to the extent that a hearing was ordered to determine whether probable cause existed to issue the original Bronx eavesdropping warrant.

On January 6, 1992, the probable cause hearing was held before Judge Silverman. At the hearing, the People first informed the defendant of the existence of Canadian wiretap tapes that the People intended to introduce at the trial. The tapes had been recorded as part of a Canadian investigation into a widespread, illegal bookmaking operation in that nation, and were authorized by an Ontario Judge. Hundreds of conversations involving a Canadian target, Richard Muller, were intercepted. Those Canadian tapes also recorded numerous conversations between Muller and the defendant. The defendant objected to the introduction of these Canadian tapes at trial, and the court directed the defendant to submit a written motion.

On or about January 7, 1992, the defendant moved to suppress the evidence derived from the Canadian wiretap tapes, arguing only that the People's failure to furnish him with a copy of the wiretap warrant and accompanying application within 15 days after his arraignment compelled suppression pursuant to CPL 700.70. In opposition to the motion, the People asserted that Canadian authorities first notified them of the existence of the Canadian tapes on or about December 18, 1990. The People received a copy of the wiretap authorization on approximately January 18, 1991. The People attempted to obtain a copy of the affidavit accompanying the wiretap authorization, but were advised by the Canadian authorities that the affidavit was sealed pursuant to Canadian law, and was only available for inspection by criminal defendants. According to the People, on "January 13, 199[2] the People for the first time received a partially redacted copy of the affidavit accompanying the Canadian wiretap authorization". The People argued that CPL 700.70 had no application to the Canadian eavesdropping evidence. It should be noted that the defendant apparently had previously been placed on notice of the existence of the Canadian wiretap evidence in a then pending prosecution in Bronx County, as well as in a prior prosecution in Nassau County.

Ruling from the Bench on January 24, 1992, the court refused to suppress the Canadian wiretap evidence, and the case proceeded to trial. The People's case included testimony

from officers of the New York State Police Department concerning the search of the defendant's premises, and testimony from Canadian police officers concerning the Canadian wiretap investigation. The Canadian wiretap tapes were introduced into evidence. Further, the court, sitting as trier of facts, listened to portions of the tapes and read transcripts of the recorded conversations between the defendant and Canadian target, Richard Muller. The defendant did not present any evidence in his behalf.

On July 8, 1992, judgment was rendered convicting the defendant of possession of gambling records in the first degree (one count) and promoting gambling in the first degree (35 counts) and sentencing him to concurrent indeterminate terms of 1⅓ to 4 years' imprisonment, and $5,000 fines on each count, for a total fine of $180,000. The most significant issue raised on this appeal is whether the Canadian wiretap tapes, and the evidence derived therefrom, were received in evidence in violation of the defendant's rights pursuant to CPL 700.70. We hold that this evidence was properly admitted at the trial and therefore affirm.

The defendant contends that the Canadian eavesdropping evidence should have been suppressed due to the People's failure to timely furnish him with the Canadian eavesdropping warrant and accompanying application pursuant to CPL 700.70. He asserts that the Legislature intended the statute to apply to all eavesdropping evidence, as evidenced by the language thereof which precludes admission of *"any* intercepted communication" (emphasis added) absent disclosure. The defendant argues that any other construction of the statute would frustrate the legislative intent, namely, to notify defendants of the prosecution's intent to use such evidence, thereby enabling defendants to bring well-prepared and timely omnibus motions to suppress.

The People argue that CPL 700.70 is inapplicable to wiretaps conducted by foreign officials in their own country. They assert that CPL 700.70 cannot apply to Canadian eavesdropping warrants and accompanying applications since such documents cannot be controlled by CPL article 700. Further, the People argue that if CPL article 700 does not apply, no bases can exist to suppress such evidence.

It is well established that the Fourth Amendment and its remedial corollary, the exclusionary rule, have no application to the extraterritorial actions of foreign authorities *(see,*

*United States v Cotroni,* 527 F2d 708, *cert denied* 426 US 906; *United States v Mount,* 757 F2d 1315; *United States v LaChapelle,* 869 F2d 488). The underlying policy of the exclusionary rule is to deter overreaching and illegal police conduct, and the exclusionary rule is considered incapable of influencing the conduct of foreign authorities *(see, United States v Cotroni, supra).* Therefore, the seizure of evidence by foreign officials in their own country need not comport with the United States Constitution to be introduced in evidence at a trial in the United States.

However, there are two widely recognized exceptions to this general rule: (1) where foreign police conduct "shock[s] the [judicial] conscience" *(United States v Cotroni, supra,* at 712, n 10) or (2) where American agents have "substantially participated in the [investigations] so as to convert them into joint ventures between the United States and the foreign officials" *(Stonehill v United States,* 405 F2d 738, 743, *cert denied* 395 US 960). Thus, in the instant matter, the defendant could have sought suppression of the Canadian eavesdropping evidence on either one of these two grounds. Indeed, the defendant argued that he was entitled to a probable cause hearing because the Canadian wiretap investigation may have shocked the judicial conscience. Accordingly, the People's assertion that if CPL article 700 does not apply, suppression cannot be had, is misguided. The question remains, however, whether CPL 700.70 is applicable to Canadian eavesdropping evidence and provides an independent ground for suppression.

CPL 700.70, as amended in 1976, provides: "The contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant unless the people, within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application, under which interception was authorized or approved. This fifteen day period may be extended by the trial court upon good cause shown if it finds that the defendant will not be prejudiced by the delay in receiving such papers". New York courts regularly require " 'strict compliance' " with the provisions of the State's eavesdropping statute *(People v Liberatore,* 79 NY2d 208, 212). A failure to comply with the notice provisions of CPL 700.70 will generally lead to the suppression of evidence derived from the intercepted communications *(People v Schulz,* 67 NY2d 144, 147). The policy underlying the notice requirement is to

"alert [ ] criminal defendants to the existence of evidence that [can] be introduced against them at trial so that a timely decision [can] be made about whether to file a motion to suppress such evidence" *(People v Basilicato,* 64 NY2d 103, 118).

An illustrative example of the strict compliance required by CPL 700.70 can be found in *People v Schulz (supra,* at 148). In that case, suppression was required under CPL 700.70 because the warrant and application were not served within 15 days after arraignment in Cattaraugus County, where the defendant was being prosecuted. Prosecutors in that county erroneously believed that investigators in Chautauqua County, where the warrant was obtained and executed, had timely served copies on the defendant. However, the Court of Appeals held that "misinformation conveyed by the officials of a neighboring county cannot reasonably be held to excuse the People's noncompliance with CPL 700.70" *(People v Schulz, supra,* at 151). Although, on its face, *Schulz* disavows the prosecution's failure to comply with CPL 700.70 due to the action or inaction of a third party, the Court's holding was premised on the unitary authority embodied in a State prosecutorial office. The Court reasoned that a " 'prosecutor's office * * * is the spokesman for the Government' * * * and the left hand should be aware of what the right hand has or has not done" *(People v Schulz, supra,* at 151, quoting *Giglio v United States,* 405 US 150, 154, and citing *Santobello v New York,* 404 US 257, 262). This line of analysis is inapposite here, where New York prosecutors had no control over, or privity with, the Canadian authorities, who conducted their own independent investigation and who possessed the wiretap evidence.

Two other cases demonstrate that the requirement of strict compliance with CPL article 700 may be limited in appropriate situations. Most recently, the Court of Appeals in *People v Liberatore* (79 NY2d 208, *supra)* held that the failure of the prosecution to furnish the defendant with a sealed, seven-page, confidential informant's statement did not violate CPL 700.70. Although the informant's statement was used to support the warrant application, the Court found the prosecution had substantially complied with CPL 700.70 by furnishing the defendant with the nearly 300 pages of other warrant application documents *(see, People v Liberatore, supra,* at 214). The Court explained that its decision: "[was] not a departure from [its] long tradition of construing the eavesdropping statute strictly * * * Rather, it represent[ed] a commonsense balance

between the rights of the defendant and the needs of law enforcement in a situation *the Legislature apparently did not contemplate" (People v Liberatore, supra,* at 216 [emphasis added]).

In *People v Baris* (116 AD2d 174), the Court held that the prosecution's failure to furnish the defendant with various attachments to warrant applications until approximately two months after arraignment did not violate the 15-day notice provision. The attachments consisted of "photographs, a record of a conviction, records of toll calls and transcripts of the telephone conversations" *(People v Baris, supra,* at 183). The Court reasoned that "[t]he delay did not work any prejudice to the defendants and did not prevent them from moving to suppress the eavesdropping [evidence] as part of their pretrial omnibus motions" *(People v Baris, supra,* at 189).

The *Liberatore* and *Baris* cases indicate that a degree of pragmatism is inherent in the notice provision in CPL 700.70. However, neither case addresses the scope of the notice provision, namely, whether it applies to wiretap evidence seized in a foreign jurisdiction. Thus, they, too, are of limited guidance in the resolution of this matter.

Since New York case law has not specifically addressed the applicability of the notice provision of CPL 700.70 to foreign wiretap evidence, a look at the construction of the substantially similar Federal eavesdropping statute is appropriate and instructive. CPL article 700 was enacted in response to the passage of title III of the Omnibus Crime Control and Safe Streets Act of 1968, which "authorized both Federal and State law enforcement officials to conduct wiretaps and other electronic surveillance provided there was due compliance with the statutory procedures" *(People v Madori,* 153 AD2d 287, 292). Indeed, CPL 700.70 substantially mirrored its Federal counterpart, codified at 18 USC § 2518 (9). As originally enacted, the Federal statute read: "The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the

party will not be prejudiced by the delay in receiving such information". It should be noted that CPL 700.70 also contained a 10-day notice provision before its amendment in 1986.

The substantial similarity between title III and CPL article 700 prompted some Federal courts to interpret the New York statute as conforming with its Federal counterpart *(see, United States v Variano,* 550 F2d 1330, *cert denied* 434 US 892 [postintercept notice pursuant to CPL 700.50 held not to be more restrictive than Federal equivalent]; *United States v Principie,* 531 F2d 1132, *cert denied* 430 US 905). The Governor's Memorandum accompanying the enactment of CPL article 700 added credence to the view that the statutes were intended to be in conformity. It stated that the New York statute aimed to "reduc[e] the potential for confusion among law enforcement officials and the likelihood of non-substantive litigation arising out of unnecessary differences between the two laws" (1969 NY Legis Ann, at 586).

However, in 1978, the Federal statute (18 USC § 2518 [9]) was amended to read: "The contents of any wire, oral, or electronic communication intercepted *pursuant to this chapter* * * * shall not be received in evidence" unless timely disclosed (emphasis supplied). The defendant makes the superficially appealing contention that the added "pursuant to this chapter" language demonstrated Congress's intent to narrow the scope of the Federal eavesdropping statute to domestic wiretaps. He thus argues that the original Federal statute, and, by implication, the substantially similar New York statute, encompassed foreign wiretap evidence. However, a closer look at the legislative history of the Federal statute indicates otherwise. As the prosecution correctly notes, the change in statutory language accompanied the enactment of new legislation (the Foreign Intelligence Surveillance Act of 1978), which authorized the issuance of wiretap warrants in national security and foreign surveillance matters. The amendment of 18 USC § 2518 (9) apparently was intended to distinguish warrants issued under its auspices from those issued under the new legislation. Thus, the scope of the Federal statute conforms with that of CPL 700.70, and the relevant Federal case law remains highly persuasive authority for New York courts. While the legislative history is not conclusive on this matter, at a minimum, related Federal case law provides instructive authority for the construction of the substantially similar New York statute.

Federal case law has specifically addressed whether a defendant's inability to review a foreign country's wiretap evidence

precludes the admissibility of that evidence. The seminal Federal case, *United States v Cotroni* (527 F2d 708, *cert denied* 426 US 906, *supra)*, held that summaries and transcripts of Canadian wiretap evidence could be introduced at trial, despite the defendant's inability to review the wiretap recordings still in possession of the Canadian police *(United States v Cotroni, supra,* at 711, 713). The analytic framework in *Cotroni (supra,* at 712), based on the prosecution's lack of " 'possession, custody or control' " over the wiretap recordings, has since been reaffirmed and expanded.

In *United States v Mitro* (880 F2d 1480, 1483), the defendants argued that their lack of access to a sealed Canadian wiretap application and affidavit " 'effectively precluded [them] from rebutting the validity and admissibility of [the] wiretapped conversations' ". The defendants sought suppression of the evidence derived from the wiretap, or an evidentiary hearing in which they could cross-examine the Canadian officials who applied for the wiretap authorization, thus potentially revealing conduct that would shock the judicial conscience *(United States v Mitro, supra,* at 1483). The court offered a strong rebuke of the defendants' argument, and declared that evidentiary hearings would not be granted absent specific allegations of overreaching conduct by the Canadian authorities: "It is pure speculation that the unsealing of this packet might have revealed conduct capable of shocking the judicial conscience. Defendants' lack of access to an additional piece of discovery does not come close to warranting the suppression of otherwise reliable and reasonably obtained foreign wiretap evidence. Nor, on this showing, were defendants entitled to an evidentiary hearing on whether the conduct of the RCMP shocked the judicial conscience. Defendants' challenge to the evidence derived from the judicially authorized wiretap has consisted solely of conclusory, general allegations; they have failed to allege any facts regarding specific acts on the part of the RCMP that would even suggest circumstances that would shock the judicial conscience. An evidentiary hearing was not required in such circumstances" *(United States v Mitro, supra,* at 1484; *see also, United States v Paternina-Vergara,* 749 F2d 993, *cert denied sub nom. Carter v United States,* 469 US 1217). Additionally, one Federal court has rejected the contention that a defendant's inability to obtain Canadian wiretap information and evidence requires

an equitable remedy *(see, United States v Delaplane,* 778 F2d 570, *cert denied* 479 US 827).

The amalgam of Federal cases makes clear that foreign wiretap evidence is not subject to the provisions of 18 USC § 2510 *et seq.* Indeed, it appears that such evidence may be introduced in Federal courts without notice to and review by defendants to determine whether its acquisition shocks the judicial conscience *(see, United States v Mitro,* 880 F2d 1480, *supra).* It should be noted that we are not called upon, and thus make no attempt to delineate the extent to which due process requires that a defendant receive some advance notice of the People's intention to offer foreign eavesdropping evidence at a trial in this State. However, we note that a defendant has no Federal constitutional or statutory right to review foreign wiretap evidence. Since a defendant's inability to review such evidence does not result in suppression, a fortiori, a defendant is not entitled to early notice for a suppression motion he or she has no right to make. No greater rights accrue to a defendant under the CPL.

Notwithstanding the prosecution's apparent lack of good faith in this case in not promptly disclosing the existence of the Canadian wiretap evidence which they knew of as early as December 1990, in not providing preliminary notice of an intent to use the wiretap evidence, or in disclosing the Canadian warrant and supporting papers as soon as they were received from Canadian authorities, a per se rule of suppression, as advocated by the defendant, would produce untenable results. The prosecution may indeed receive foreign wiretap evidence more than 15 days after arraignment. Should such an untimely acquisition, one completely beyond the control of the prosecution, automatically bar use of the evidence? Such a result would preclude the prosecution from introducing reliable information to corroborate or buttress the evidence gathered from its own local investigation. As one State court explained in justifying its admission of wiretap evidence legally obtained in another State, but in contravention of its own antiwiretap statute: "A conclusion that denies the exchange of information between law enforcement agencies of our Commonwealth and those of our sister states cannot be justified. The overriding public policy must be to allow such an exchange, for public policy, in the absence of legislative mandate, must favor the interest of the public [policy] by fostering its protection through the detection and apprehension of those who persist in defying our laws" *(Commonwealth*

*v Bennett,* 245 Pa Super 457, 460-461, 369 A2d 493, 494; *see also, State v Engel,* 249 NJ Super 336, 592 A2d 572; *People v Barrow,* 133 Ill 2d 226, 549 NE2d 240, *cert denied* 497 US 1011).

A more equitable result is the one attained herein. The defendant moved to suppress the foreign wiretap evidence upon receipt of notice of the People's intention to offer it at trial. He was granted an adjournment, providing him with ample time to prepare his defense to this evidence. This approach ameliorated the potential for prejudice resulting from the People's belated disclosure. The defendant thus had sufficient notice and a viable opportunity to seek suppression. Therefore, we reject his untenable claim that the mere failure to disclose the foreign wiretap evidence pursuant to CPL 700.70 should result in a per se rule of suppression, as the Legislature obviously did not intend such a consequence.

Accordingly, the People's failure to disclose the existence of the Canadian wiretap evidence within 15 days after arraignment does not constitute a violation of CPL 700.70 mandating suppression. Rather, as the defendant has not demonstrated that this evidence was seized in a manner that would shock the conscience of the Court, or as a result of any involvement by New York law enforcement authorities, and, indeed, has not even advanced any such arguments, we find that the Canadian wiretap evidence was properly received in evidence by the County Court.

We have reviewed the defendant's remaining contentions and find them to be without merit.

THOMPSON, J. P., ROSENBLATT and RITTER, JJ., concur.

Ordered that the judgment is affirmed, and the matter is remitted to the County Court, Westchester County, for further proceedings pursuant to CPL 460.50 (5).